NOTE:   This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-3429

JOHN STRADER,

Petitioner,

v.

DEPARTMENT OF LABOR,

Respondent.

Barrie M. Shapiro, Minahan and Shapiro, P.C., of Lakewood, Colorado, for petitioner.

Robert C. Bigler, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent.  With him on the brief were Peter D. Keisler, Assistant Attorney General, Jeanne E. Davidson, Director, and Franklin E. White Jr., Assistant Director.  Of counsel were Elizabeth Thomas, and Stephen C. Tosini, Attorneys.

Appealed from:  United States Merit Systems Protection Board

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-3429

JOHN STRADER,

Petitioner,

v.

DEPARTMENT OF LABOR,

Respondent.

---

DECIDED:  August 8, 2007

---

Before RADER and SCHALL, <u>Circuit Judges</u>, and FARNAN, <u>District Judge</u>.<sup>*</sup>

PER CURIAM.

## DECISION

John Strader petitions for review of the final decision of the Merit Systems Protection Board ("Board"), affirming the Department of Labor's ("agency's") demotion of Mr. Strader for unacceptable work performance.  <u>Strader v. Dep't of Labor</u>, No. DE0432050421-I-1 (M.S.P.B. Aug. 15, 2006) ("<u>Final Decision</u>").  We <u>affirm</u>.

---

<sup>*</sup>        Honorable Joseph J. Farnan, Jr., District Judge, United States District Court for the District of Delaware, sitting by designation.

DISCUSSION

I.

Mr. Strader is a workers' compensation claims examiner for the agency in Denver, Colorado. His job responsibilities include managing injured workers' claims with the dual goals of paying benefits promptly until the work-related condition is resolved and facilitating the return to duty of workers after injury.

On July 21, 2004, Mr. Strader was officially notified that he had failed to meet two of the four critical elements for his position's performance standard. The notice placed Mr. Strader on a 90-day performance improvement plan ("PIP"). The PIP outlined the agency's expectations for Mr. Strader, explained where he had been underperforming, instructed him on how he could and should improve his performance, and explained the assistance management would provide during the PIP period. Mr. Strader was informed that he needed to maintain at least a "needs to improve" rating during the PIP period and for one year after its completion or else he could be subject to removal or demotion without an additional PIP period. During the PIP period, Mr. Strader maintained a performance level of needs to improve or better, as exemplified by his rating of "effective" in an October 28, 2004 performance appraisal.

On November 2, 2004, Mr. Strader was place under new performance standards. Subsequently, Ms. Nigel Strozier, Mr. Strader's supervisor, concluded that shortly after his October performance review, Mr. Strader's performance had deteriorated. In reaching her conclusion, Ms. Strozier reviewed eighteen of Mr. Strader's assigned cases for the management subcomponent of Critical Element 2. She found that eight of eighteen, or 44%, had progressed at an acceptable rate, while the needs to improve

standard required an acceptable rate of 80%. For the decisions subcomponent, Ms. Strozier's review found only one of thirteen cases in compliance, or 8%. On April 5, 2005, Ms. Strozier proposed that Mr. Strader be removed for unacceptable performance of Critical Element 2.

On June 10, 2005, Mr. Strader was notified of the agency's decision to demote him, and on June 26, 2005, Mr. Strader was demoted. He appealed to the Board.

## II.

The administrative judge ("AJ") to whom the case was assigned entered his decision based on the written record because Mr. Strader withdrew his request for a hearing. Strader v. Dep't of Labor, No. DE0432050421-I-1, slip op. at 1-2 (M.S.P.B. Mar. 3, 2006) ("Initial Decision"). The AJ found that the agency's performance appraisal plan had been approved by the Office of Personnel Management, that the performance standards were not unreasonably vague, that the agency had demonstrated by substantial evidence that Mr. Strader had not met the performance standards, and that the case sampling for comparison with the performance standards was "objective and systematic." Id. at 6-10. Accordingly, the AJ affirmed the agency's decision to demote Mr. Strader. Id. at 11.

The Initial Decision became the final decision of the Board on August 15, 2006, when the Board denied Mr. Strader's petition for review. Final Decision, at 1-2. This appeal followed.

We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

III.

Our scope of review in an appeal from a decision of the Board is limited. Specifically, we must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c); Kewley v. Dep't of Health & Human Servs., 153 F.3d 1357, 1361 (Fed. Cir. 1998).

On appeal, Mr. Strader makes essentially two arguments. First, he contends that he was improperly subjected to "subjective or imprecise" performance standards. In that regard, he urges that his performance standard was changed because, after the PIP period, Ms. Strozier began counting errors on a "one" basis instead of a "one-half" basis, i.e., each error counted twice as much as it did during the PIP period. If this same standard had been applied during the PIP period, Mr. Strader asserts, his performance that the agency found acceptable during the PIP period would not have been acceptable. Mr. Strader argues that an agency cannot find performance acceptable and then later find that same performance unacceptable, when it is the focus of an adverse action.

Second, Mr. Strader argues that substantial evidence does not support the finding that, during the post-PIP period, he failed to meet the required performance standards. Mr. Strader contends that Ms. Strozier's sampling methodology was not "objective and systematic." Mr. Strader states that Ms. Strozier's sampling was "a combination of random sampling, sampling involving particular claims situations, and sampling certain files or tasks where Ms. Strozier believed she would find acceptable

work." Mr. Strader contends that Ms. Strozier only reviewed 1.97% of his work and that this was not a sufficient sample upon which to conclude that his performance was unsatisfactory. See Bowling v. Dep't of Army, 47 M.S.P.R. 379, 384 (1991) (finding a review of less than 7% of employee's work insufficient to establish performance). Further, Mr. Strader asserts that Ms. Strozier based part of her acceptability rate not "on anything he did after the end of his PIP, but on tasks he did not do during his PIP."

We reject Mr. Strader's arguments. We agree with the Board that any error relating to the "one" basis change was harmless. Initial Decision, at 8-9. Mr. Strader's performance was sufficiently below the required level that even if the basis had remained the same, Mr. Strader's performance was still unsatisfactory. As noted, for the decisions subcomponent of Critical Element 2, Ms. Strozier found twelve of the thirteen cases were deficient, which fell well below the 80% performance standard regardless of whether the errors were counted on a one or one-half basis. Id. Because Mr. Strader's performance would have failed under the one-half basis, we need not address whether the agency's approach created a situation in which performance that it previously had found acceptable subsequently was found unacceptable. See King v. Gen. Servs. Admin, 26 M.S.P.R. 2, 4 (1984).

As for Ms. Strozier's sampling method claim, we see no reason to disturb the Board's decision. Initial Decision, at 9. The Board found that the sample size was large enough to evaluate the body of Mr. Strader's post-PIP work. Id. This finding is not arbitrary or capricious, as Ms. Strozier reviewed 13 out of 134 cases available for the decisions subcomponent of Critical Element 2—almost 10%. Also, the Board explained how some of the errors that were found may have originated during the PIP period but

were still properly counted as errors after the PIP period: "I agree . . . with the agency's cogent argument that, although some of the appellant's errors were initially made during the PIP, they were either perpetuated into the post-PIP period by [Mr. Strader's] continuing failure to take requisite action or constituted new errors altogether (e.g., each 45 days in which no required action is taken by a Claims Examiner counts as a new error)." Id. at 9-10.

We have considered Mr. Strader's other arguments and have found them to be without merit.

For the forgoing reasons, the final decision of the Board is affirmed.

No costs.